IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06-CR-30059 |
| ) | |
| TRIBBEUNA D. CROSS, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This cause comes before the Court on Defendant's Motion to Suppress Statements Obtained in Violation of the Fifth Amendment (d/e 6) (Motion to Suppress). The motion is fully briefed, and pursuant to Local Rule 72.1, the District Judge has referred the matter to this judge for an evidentiary hearing and Report and Recommendation. See Text Order, September 26, 2006. After carefully considering all of the submissions of the parties, hearing evidence on the matter, and pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Motion to Suppress be DENIED.

I.  BACKGROUND[1]

Defendant Tribbbuena Cross is charged in a one-count Indictment (d/e 1) as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  The matter came before this Court for evidentiary hearing on the instant Motion on October 18, 2006.  The Government called two witnesses, Officers Doug VanderMaiden and Lee Mangold of the Quincy Police Department.  After discussing the possible uses of any testimony he might give with his attorney, Defendant declined to testify.  The Defense produced no evidence.

Based on the testimony heard in open court, at approximately 4:37 p.m. on May 22, 2006, Officer VanderMaiden was dispatched to 936 Vermont Street, Quincy, Illinois, based on a report of a disturbance between a man and a woman at this address.  Officer VanderMaiden has been with the Quincy Police Department for over ten years.  Officer VanderMaiden testified that when he arrived at the scene, he saw Cross arguing with Amanda Jones, who was holding a young child.  As the officer approached, Cross and Jones walked away from him.  Officer VanderMaiden asked the individuals to stop. Jones complied, but Cross did not.  Cross walked to the side of a white car

---

[1] **This Report and Recommendation is prepared without the benefit of a transcript.**

that was parked in the parking lot of 936 Vermont. Cross opened and then closed the front passenger door of the car. Officer VanderMaiden could not see Cross' hands during this time.

After closing the door, Cross walked back over to Jones and began arguing with her again. Officer VanderMaiden drew Cross away from Jones and asked him to identify himself. Officer VanderMaiden could detect an odor of alcohol on Cross and assumed that he was intoxicated. Cross replied that the officer knew who he was. Officer VanderMaiden testified that he did not recognize Cross until Cross eventually gave the officer his name. Officer VanderMaiden characterized Cross' speech at this point as broken with slang, but not slurred or unusual. Officer VanderMaiden then conferred with Officer Chad Liesen who had arrived on the scene and spoken with Jones.

After speaking with Officer Liesen, Officer VanderMaiden went over to the white car and looked into it, through the window, on the side where Cross had been standing. Without entering the car, Officer VanderMaiden could see a handgun on the floor of the car. He informed Officer Leisen that there was a gun in the car. At this point, Cross started to walk away from the area. Officer VanderMaiden told Officer Leisen to get Cross. Cross began to run from the officers, running north between two buildings. Officer Leisen pursued

Cross, and Officer VanderMaiden lost sight of Cross for a while. When Officer VanderMaiden regained sight of Cross, he saw Cross and Officer Leisen running near the middle of the block on Vermont Street. Officer Leisen had a Taser gun out, and he called out to Cross to stop or he would use the Taser. Officer VanderMaiden heard the Taser gun discharge and then saw Cross fall into the street. Officer VanderMaiden took the Taser from Officer Leisen, to allow Leisen to handcuff Cross, who remained on the ground. Officer VanderMaiden then turned his attention to Jones. Officer VanderMaiden estimated that the Taser gun was discharged at approximately 4:50 or 4:55 p.m. Officer VanderMaiden testified that Cross did not stumble as he was running from the officers, but that he did have a limp, which resulted from a prior gunshot wound.

Officer VanderMaiden also carries a Taser gun in his role as a police officer. He explained that, when first fired, the Taser gun projects two twenty-one foot wires with probes on the end of each. Voltage then passes between the two probes for five seconds, unless it is stopped earlier. If the weapon is fired a second time, after the probes have discharged, another round of voltage passes between the probes for a maximum of five seconds. Officer

VanderMaiden testified that both probes must make contact with an individual in order for the individual to experience a shock from the voltage.

Officer VanderMaiden testified that Officer Leisen told him that, in subduing Cross, he had pulled the trigger on his Taser a second time, shortly after the initial firing. After Cross was handcuffed, Officer Leisen searched him and placed him in a squad car. Officer VanderMaiden walked back to the white parked car and cleared the handgun.

Officer VanderMaiden testified that he next had contact with Cross at the Quincy Police Department booking area at approximately 5:31 p.m. at which time Officer VanderMaiden advised Cross of his Miranda rights. Officer VanderMaiden presented Cross with a written Statement of Rights. Government's Ex. A. Officer VanderMaiden read each sentence to Cross and then paused to allow Cross to acknowledge that he understood. When Cross made the acknowledgment, Officer VanderMaiden placed a check-mark next to the statement. Officer VanderMaiden then asked Cross to read the Acknowledgment of Rights aloud, which he did without difficulty. Cross then signed his name on the signature line, under which it reads, "Signature Requested, but not Required." Officer VanderMaiden noted that Cross did not show any difficulty signing the paper. The Court notes that Cross' signature

is well-placed with respect to the signature line. Officer VanderMaiden testified that Cross appeared "normal" during their interaction and did not seem to be impaired or disoriented.

After the Statement of Rights was completed, Officer VanderMaiden asked Cross about the handgun. Cross denied knowing about it. Officer VanderMaiden then began working on paperwork, and came in and out of the booking area several times. During this time, he had several short conversations with Cross. At one point, Officer VanderMaiden informed Cross that he was going to be detained in the jail. Cross told VanderMaiden that he "knew stuff," indicating that he would like to make a deal to obtain leniency for himself. Officer VanderMaiden told Cross that First Assistant Adams County State's Attorney Gary Farha was the only one who could make a deal with Cross. Officer VanderMaiden told Cross that he would not call Farha unless Cross made a true statement. Officer VanderMaiden also told Cross that he would probably still be charged and might still be detained despite any deal.[2]

---

[2] **In an attempt to impeach Officer VanderMaiden, defense counsel presented the officer with a copy of a police report that did not include a notation of either of these disclaimers. Officer VanderMaiden testified that the copy of the report presented by defense counsel was not the final version of his report. He testified that it is common practice for him to dictate his reports. They are then typed up in the typing pool and given to him for review. He makes changes which are incorporated into the final report. Officer VanderMaiden noted that his final report, which was signed on May 31, 2006, did indeed note that he cautioned Cross that he could still be charged and detained even if he cooperated.**

At this point, Cross told Officer VanderMaiden that he had purchased the handgun four days earlier from a man in Hannibal, Missouri. When Cross made the statement, Officer VanderMaiden noted that he did not seem impaired, that Cross was respectful and responsive. After Cross made the statement, Officer VanderMaiden and Officer Pilkington walked Cross out to an area of the police garage where Officer VanderMaiden could establish a cell phone signal. Officer VanderMaiden then called Farha from his cell phone to discuss Cross' offer of cooperation. Officer VanderMaiden took Cross with him to the garage so Cross could hear the call and be available in case Farha requested any additional information.

After the conversation with Farha, Officer VanderMaiden took a tape recorded statement from Cross in a police interview room. Officer Pilkington was also present in the interview room during the statement. A compact disc containing an audio recording of the statement was entered into evidence and played in open court. Government Ex. B-1. At the beginning of the recording, Officer VanderMaiden stated that the time was 19:36, which the Court notes is 7:36 p.m. Cross then identified himself and provided his date of birth and address. In the statement, Cross confirmed that he purchased the handgun from a white male in Hannibal, Missouri for $75.00. The Court notes that

Cross' speech on the recording was not slurred and that he was responsive and respectful.

Officer Lee Mangold then testified. Officer Mangold, a twenty-three year veteran of the Department, stated that he was called to the police station on May 22, 2006 to interview Cross. Officer Mangold stated he confirmed that Cross had waived his Miranda rights. Officer Mangold interviewed Cross and looked into signing Cross up to work as a confidential informant. Mangold testified that Cross was cooperative. Mangold stated that Cross was under arrest when he met with him, but that at some subsequent point that evening, Cross was released from custody. Officer Mangold had instructed Cross to contact him after being released to set up some cooperation; Cross, however, failed to do so.

Officer Mangold also has experience with Taser guns. He testified that, as a part of his training approximately one-and-a-half to two years ago, he was shocked with a Taser for less than five seconds. He explained that during the time he was being shocked, he lost all mobility. However, Mangold stated that he regained his composure seconds after the shock was over and that he did not experience any lingering disorientation.

The Government presented certified copies of seven of Defendant's prior convictions. Government Group Ex. D. Defendant did not object to these documents, and they were admitted into evidence.

## II.  ANALYSIS AND CONCLUSIONS OF LAW

The Fifth Amendment protects an individual from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In Miranda v. Arizona, the Supreme Court recognized that "in-custody interrogation" places "inherently compelling pressures" on persons interrogated. Miranda, 384 U.S. 436, 467 (1966). Thus, to safeguard the Fifth Amendment privilege against self-incrimination, under Miranda, the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Id. at 444. A defendant may waive his Fifth Amendment rights as articulated in Miranda "provided the waiver is made voluntarily, knowingly, and intelligently." Id. Therefore, "[w]hen a Miranda waiver is challenged, two distinct questions are presented: whether the waiver was voluntary, knowing, and intelligent as a matter of fact, and whether it was

involuntary as a matter of law." Henderson v. DeTella, 97 F.3d 942, 946 (7th Cir.1996).

Furthermore, a confession is statutorily admissible in a criminal prosecution if it is voluntarily given. 18 U.S.C. § 3501(a). Under 18 U.S.C. § 3501(b),

> The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b).

In the instant case, it is undisputed that Officer VanderMaiden informed Cross of his Miranda rights at the Quincy Police Department at approximately 5:31 p.m. and that Cross acknowledged that he understood these rights. After being advised of his rights, Cross waived those rights and made several statements to law enforcement officials. Cross seeks to suppress the confessions he made, arguing that his waiver of rights was involuntary

because he was intoxicated and disoriented by the after effects of the Taser.[3] For the reasons set forth below, Cross' Motion to Suppress should be denied.

Defendant's intoxication alone – without some showing of coercion by law enforcement – is insufficient to negate voluntariness. United States v. Chrismon, 965 F.3d 1465, 1469 (7th Cir. 1992). The Supreme Court has recognized that a waiver is voluntary in the absence of coercion. Colorado v. Connelly, 479 U.S. 157, 167 (1986). Therefore, "[a] diminished mental state is only relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective." Chrismon, 965 F.3d at 1469 (citing Andersen v. Thieret, 903 F.2d 526, 530 n. 1 (7th Cir. 1990) (defendant's "intoxication by itself could not support a finding of involuntariness and is relevant only to the extent it made him more susceptible to mentally coercive police tactics")).

Cross points to the officer's use of the Taser as evidence of the necessary element of police coercion which combined with his intoxication to render his statements involuntary. However, the Court notes that the Taser incident occurred over a half an hour before Cross was advised of his Miranda rights. After being advised of his rights, Cross initially denied involvement with

---

[3]**In open court, Defendant abandoned his argument that the statements were induced by false promises of leniency. Therefore, the Court will not address this issue.**

the handgun and Officer VanderMaiden began working on paperwork that brought him in and out of the booking area. Therefore, additional time passed before Cross' first confession was made.

Cross has presented no evidence to support his theory of lingering disorientation from being shocked with a Taser. Officer VanderMaiden testified that Cross appeared "normal" during their interaction and did not seem to be impaired or disoriented. The Court found Officer VanderMaiden to be a particularly credible witness. Moreover, as previously noted, Cross' signature on the Acknowledgment of Rights is well-placed and consistent with the signature line.

Furthermore, Cross fails to identify any physically coercive acts that occurred during the time Cross was at the police station, nor is there any mention of Tasers being used or displayed after Cross was initially subdued. See Chrismon, 965 F.2d at 1470 (holding that physically coercive acts incident to an arrest more than an hour before defendant confessed were not intended to and did not have the effect of coercing defendant into waiving his rights). The Court notes that Officer Leisen, the officer who "tased" Cross, was not mentioned as being present during the interviews at the station.

The question of whether Cross voluntarily waived his Miranda rights is a fact-dependant inquiry. Factors relevant to the inquiry include the defendant's age, education, intelligence level and mental state, prior experience with the criminal justice system, the length of his detention, the nature of the interrogations, the inclusion of advice about constitutional rights, and the use of physical punishment, including deprivation of food or sleep. United States v. Brooks, 125 F.3d 484, 492 (7th Cir. 1997). The Seventh Circuit has noted that "[s]uch influences as narcotics, alcohol and fatigue also may be factors to be considered in a particular case. However, the test for voluntariness of the statement is whether the claimed impairments caused the defendant's will to be overborne." Id.

Under the totality of the circumstances of the instant case, considering the facts surrounding the entire interaction between Cross and law enforcement officials on May 22, 2006, it is clear that Cross' waiver of rights was voluntary. There is no indication that Cross' intoxication or the administration of the Taser impaired Cross to such a level that his will was overborne. In fact, there is no "evidence" of the effect of the Taser on Cross and his waiver of rights. Cross' detention prior to his confession was not lengthy. Cross was advised of his rights, and he acknowledged that he

understood them. Indeed, Cross' familiarity with the criminal justice system is undisputed. There is no indication of any overreaching or physical abuse whatsoever in connection with the interrogations. Cross' statements were clearly the product of rational intellect and free will and not the result of police coercion. See Brooks, 125 F.3d at 492. They are, therefore, admissible, and Cross' arguments to the contrary should be rejected.

### III. CONCLUSION

For all the above reasons, I strongly recommend that Defendant's Motion to Suppress Statements Obtained in Violation of the Fifth Amendment (d/e 6) be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after being served with a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986); Local Rule 72.2.

ENTER: October 20, 2006

                          s/ Byron G. Cudmore
                        _____
                          BYRON G. CUDMORE
                       UNITED STATES MAGISTRATE JUDGE